■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFRED BERG and CAMILLO LOVACCO, Appellants. — Appeals by defendants from two judgments (one as to each of them) of the Supreme Court, Kings County (Pizzuto, J.), both rendered May 14, 1981, convicting each of them of assault in the second degree and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentences. Judgments reversed, on the law, and new trial ordered. The facts upon which the judgments are based have been considered and are determined to have been established. The record reveals that in the early morning of November 5, 1978, Police Officer Frank Fitzgerald was driving on Second Avenue in Brooklyn when he observed a group of three men standing over a person who was lying on the ground. He testified at the trial that as he approached the men he observed that they were hitting the person on the ground and that "[o]ne of the men had a bat." As Fitzgerald drove down the street toward the individuals, they entered a black Plymouth Fury that had been parked at the curb. Fitzgerald followed the car for a few blocks until it came to a stop. At that point all three individuals alighted from the car. Fitzgerald testified that "the two men in the front seat, as they were getting out of the car, they turned around and looked at me." He identified appellant Berg as the driver of the car. Fitzgerald further testified that he stopped his

patrol car behind the Fury. He exited his patrol car and ran up to the Fury, apprehending and arresting appellant Lovacco who was exiting the rear seat of the car. Appellant Berg was subsequently found by another police officer a few blocks away, crouching under a van in an alleyway. Appellants were jointly tried and found guilty of assault in the second degree and criminal possession of a weapon in the fourth degree. On these appeals they raise questions concerning the sufficiency of the proof adduced at the trial to sustain their convictions and the prejudicial impact of the victim's refusal to answer questions on the witness stand. While the record reveals sufficient evidence to sustain the jury's verdict, we must reverse the convictions for the reasons set forth below. Appellants assert that they were deprived of their due process right to a fair trial when the prosecutor called the victim to the stand knowing that he would refuse to answer any questions presented to him. In determining whether prejudice results in such a situation, a court should "[look] to the surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error." (*Namet v United States,* 373 US 179, 186.) The first factor is in the nature of prosecutorial misconduct based upon a conscious and flagrant attempt by the People to build its case out of inferences arising from the use of the testimonial privilege. The second basis for error is found when inferences from a witness' refusal to answer add critical weight to the prosecution's case in a form not subject to cross-examination. (*Namet v United States, supra,* p 187.) Both factors were present in the case at bar. The record indicates that the appointed counsel for the victim unequivocally stated to the court and the prosecutor that the witness would refuse to answer any questions on the witness stand. In light of this knowledge, the prosecutor's conduct in calling the witness to the stand amounted to an attempt to bolster his case with the inferences which would necessarily arise in the juror's minds from the victim's refusal to testify. Since his refusal was not based upon an invocation of his Fifth Amendment right, the "natural, indeed an almost inevitable, inference arises" that he feared reprisals if he identified appellants as the men who assaulted him. (See *United States v Maloney,* 262 F2d 535, 537.) Turning to the second factor enunciated in *Namet v United States* (373 US 179, *supra*), we are also of the view that the victim's refusal to answer added critical weight to the prosecutor's case. This was not an ordinary witness whose testimony was merely cumulative in nature or collateral to the main issue. (See *Zeigler v Callahan,* 659 F2d 254; *People v Jackson,* 102 Misc 2d 443.) Rather, he was the victim of the crime whose reluctance to identify his attackers might well have been taken by the jury as a strong indication that the appellants were indeed the assailants and had managed to intimidate their victim into silence. Such "evidence," of course, was not subject to the test of cross-examination; nevertheless it likely constituted a powerful bolstering of the prosecution's case. (Cf. *People v Baker,* 39 NY2d 923, 924, concurring opn by Breitel, Ch. J.; *United States v Demchak,* 545 F2d 1029.) Under the circumstances, the belated cautionary admonition to the jury, given after a recess was called following the victim's refusal to answer while on the stand, was insufficient to remove the prejudicial impact which resulted from that refusal. (See *People v Pollock,* 21 NY2d 206.) The judgments appealed from should be reversed and a new trial ordered. Mollen, P. J., Mangano, Brown and Rubin, JJ., concur.